UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

NICOLE COLANDREA

                     Plaintiff,

                                           06 Civ. 11441 (SCR)

        v.                              MEMORANDUM
                                           DECISION AND ORDER

TOWN OF ORANGETOWN, KEVIN
NULTY, ROBERT ZIMMERMAN and
"JOHN DOE", each in both official and
individual capacities

                     Defendants.

_____

**Stephen C. Robinson, United States District Judge:**

      Plaintiff Nicole Colandrea brings claims under Title III of the Omnibus Crime
Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-20 (hereinafter "Wiretap Act"),
the First Amendment, the Fourth Amendment, the Equal Protection Clause of the
Fourteenth Amendment, and various state law claims. Defendants filed a motion to
dismiss the complaint under Rule 12(b)(6) on various grounds discussed individually
below. In addition, both Defendants and Plaintiff have cross-moved to disqualify each
other's counsel. Plaintiff also moves for sanctions. For the reasons below, Defendants'
motions are granted in part and denied in part. Plaintiff's motion is denied.

## I. Facts

      This matter is related to several other matters currently pending before the Court,
involving a police officer in the Town of Orangetown, Lorraine Wetzel (Docket Numbers
03 Civ. 9896, 06 Civ. 5144, 06 Civ. 6117, 06 Civ. 15190), alleging, among other things,
gender discrimination. Ms. Wetzel also alleges that, in retaliation for bringing her claim
for gender discrimination, she has been the subject of a disciplinary hearing conducted by
Joseph E. Wooley, a hearing officer appointed by the Orangetown Town Board.

      Unrelated to those events, Plaintiff here alleges that on the evening of July 7,
2004, Plaintiff's boyfriend, Frank Dowd, a recovering alcoholic, became intoxicated and
arrived home. Plaintiff's mother contacted the Orangetown Police Department, who
arrested Mr. Dowd for disorderly conduct. While in custody, Mr. Dowd made several
phone calls to Plaintiff, which are alleged to be of a highly personal nature. These phone
calls were recorded, allegedly without notice to Mr. Dowd or Plaintiff.

Subsequent to these events, the disciplinary charges against Lorraine Wetzel were brought.  For reasons not entirely clear from the face of the complaint, the recordings in question were played at Wetzel's disciplinary hearing.  Thereafter, plaintiff brought this suit against Defendants alleging that the recordings had been made illegally, and that the playing of the recordings at Wetzel's disciplinary hearing injured her.

## II.  Analysis

### A.  12(b)(6) Standard

In evaluating a motion to dismiss, a court "must view all allegations raised in the complaint in the light most favorable to the non-moving party . . . and 'must accept as true all factual allegations in the complaint.'"  *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 662 (2d Cir. 1996) (quoting *Leatherman v. Tarrant County Narcotics Unit*, 507 U.S. 163 (1993)) (citation omitted).  In doing so, a court is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient."  *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).  A court must deny a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Stewart v. Jackson & Nash*, 976 F.2d 86, 87 (2d Cir. 1992) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Because the complaint must allege facts which confer a cognizable right of action, "'[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"  *York v. Ass'n of the Bar*, 286 F.3d 122, 125 (2d Cir. 2002) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### B.  Wiretap Act Claims

Defendants move to dismiss Plaintiff's claims on the grounds that the recordings in question cannot be subject to suit because they were made by "an investigative or law enforcement officer in the ordinary course of his duties".  *See* 18 U.S.C. § 2510(5)(a)(ii). Defendants' motion on this basis is denied.

Defendants argue that the Town of Orangetown routinely records all phone calls in and out of its police station, and therefore it is not subject to suit under the Wiretap Act.  Although some courts have indicated that a town which routinely recorded all phone calls made in and out of its police station would not be liable under the Wiretap Act, *see, e.g.*, *Amati v. City of Woodstock*, 176 F.3d 952 (7th Cir. 1999), the Court notes that those courts have also indicated that the exception applied to "routine non-investigative" recordings.  *See e.g.*, *id.* at 955 ("ordinary" refers to "routine noninvestigative recording of telephone conversations." ); *United States v. Hammond*, 148 F. Supp.2d 589, 592 n.3 (D. Md. 2001)("[O]rdinary course of an investigative officer's duties refer[s] to routine noninvestigative recording of telephone conversations, as opposed to recordings made pursuant to a specific investigation.")(internal quotes omitted).  While Defendants assert that the town did indeed record all phone calls in and

2

out of its police station, it supports this assertion by pointing to only one reference – testimony given at the Wetzel disciplinary hearing. *See Declaration of Edward Phillips*, Ex. H at 144-45.  While the Court may take judicial notice of this record of this disciplinary hearing, *see Thomas v. Westchester County Health Care Corp.*, 232 F. Supp.2d 273, 276 (S.D.N.Y. 2002), the Court finds the record inadequate at this point to rule in Defendants' favor absent discovery on this issue.

Additionally, there is an inadequate factual record with regards to how much notice was provided to plaintiff or her boyfriend.  The Second Circuit has suggested, but has specifically not decided, that some notice is required to come under the "ordinary course" exception.  *See United States v. Friedman*, 300 F.3d 111, 122 (2d Cir. 2003). However, given there are no facts properly before the court regarding what notice if any was provided, the Court need not decide this issue at this time.

## C.  Fourth Amendment Claims

Similarly, Defendants' motion to dismiss the Fourth Amendment claims is also denied.  In analyzing plaintiffs' Fourth Amendment claims, the question before the court is whether Plaintiff had a reasonable expectation of privacy that her phone call would not be recorded.  *See United States v. Titemore*, 437 F.3d 251, 259 (2d Cir. 2006). Defendants assert that Plaintiff had no reasonable expectation of privacy because the policy of police departments recording all phone calls in and out of police station is well known.  However, as discussed already, the Court has an inadequate factual record before it to determine whether the police department here did in fact routinely record all phone calls, or to determine what if any notice was provided to plaintiffs.

## D.  First Amendment

Defendants' motion to dismiss Plaintiff's free speech claims is granted.  "A plaintiff asserting [a] First Amendment claim must allege that (i) he has an interest protected by the First Amendment, (ii) the defendant's actions were motivated by or substantially caused by the plaintiff's exercise of that right; and (iii) the defendant's action effectively chilled the exercise of the plaintiff's First Amendment rights*." Connell v. Signoracci*, 153 F.3d 74, 79 (2d Cir. 1998).  Plaintiff's complaint alleges retaliation by the town against Mr. Dowd and Lorraine Wetzel, *see* Complaint ¶¶ 42, 73, but never alleges that the actions by the defendant, i.e. recording and playing the conversations in question, were "motivated by or substantially caused by" *Plaintiff's* exercise of a First Amendment right.  Plaintiff therefore fails to state a claim under the free speech clause of the First Amendment.

Plaintiff also fails to state a claim under the free association clause of the First Amendment.  "The Supreme Court has recognized a right of association with two distinct components--an individual's right to associate with others in intimate relationships and a right to associate with others for purposes of engaging in activities traditionally protected by the First Amendment, such as speech and other expressive conduct." *Adler v. Pataki*,

185 F.3d 35, 42 (2d Cir. 1999).  While the Second Circuit has recognized that "a spouse's claim that adverse action was taken solely against that spouse in retaliation for conduct of the other spouse should be analyzed as a claimed violation of a First Amendment right of intimate association", *see id.* at 44, plaintiff never alleges that the conduct complained of – i.e. the recording of her conversation or the playing of her conversation at the hearing, was in retaliation for her relationship with Mr. Dowd.[1] Indeed, Plaintiff herself alleges a different motivation – to support allegedly retaliatory charges against Lorraine Wetzel because she had complained of gender inequality.  *See Complaint*.  ¶¶ 12, 86-91, 103.  With respect to the second type of associational right, plaintiff does not allege that she engaged in a relationship with Mr. Dowd *for the purposes* of engaging in activities protected by the First Amendment – he was her boyfriend.  Therefore, this type of associational right is not implicated here.

Accordingly, Plaintiff's First Amendment free speech and free association claims are dismissed.

## E.  Equal Protection

Defendants' motion to dismiss Plaintiff's Equal Protection claims is granted.  "To prevail on a selective treatment claim, a plaintiff must show that (1) he was treated differently from other similarly-situated individuals; and (2) the differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  *Skehan v. Village of Mamaroneck*, 465 F.3d 96, 110 (2d Cir. 2006)(internal quotes omitted).  Additionally, a plaintiff may make out an equal protection claim "brought by a class of one, where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  Plaintiff's equal protection claim here fails because the complaint fails to allege any similarly situated class of persons with respect to whom she was treated differently.  Accordingly, Plaintiff's Equal Protection claims are dismissed.

## F.  Privileges and Immunities

Plaintiff asserts claims under the privileges and immunities clause.  *Complaint* ¶ 124.  Although Defendants do not move to dismiss this claim, the Court dismisses it *sua sponte* because plaintiff is a citizen of New York, and fails to allege, and indeed could not allege, that Defendants, also citizens of New York, discriminated against her because of her out-of-state citizenship. *See Saenz v. Roe*, 526 U.S. 489, 503-04, 511 (1999); *Hague v. Committee for Indus. Org.*, 307 U.S. 496, 511 (1939)( the Privileges and Immunities clause "prevents a State from discriminating against citizens of other States in favor of its own"); *Bach v. Pataki*, 408 F.3d 75, 88 (2d Cir. 2005)("In order to prevail on a Privileges and Immunities challenge, a plaintiff must demonstrate that the "State has, in fact, discriminated against out-of-staters with regard to the privileges and immunities it

---

[1] The Court assumes, without deciding, that a Plaintiff may state a claim for intimate association vis-à-vis her domestic partner rather than only a "spouse".

accords its own citizens.").  Accordingly, Plaintiff's claim under the Privileges and Immunities clauses of the Constitution are dismissed.

### G.  Immunity of Chief Nulty and Captain Zimmerman

Defendants move to dismiss the claims against Defendants Nulty and Zimmerman on the basis of absolute and qualified immunity.  Defendants' motion is granted in part.

With respect to Chief Nulty, absolute immunity extends to executive officers initiating administrative proceedings.  *Spear v. West Hartford*, 954 F.2d 63, 66 (2d Cir. 2002).  To the extend that Plaintiff is alleging that Nulty is liable because the initiation of disciplinary proceedings against Lorraine Wetzel caused the tapes in question to be played, Plaintiff's claims are dismissed.[2]  However, plaintiff also appears to allege that Nulty is liable for the allegedly illegal recording of the conversation itself (as opposed to its subsequent public playing).  Because the recording of the conversation itself is unrelated to the initiation of the disciplinary proceedings, absolute immunity does not protect Nulty from any potential liability for the recording.

Similarly, with respect to Captain Zimmerman, Plaintiff alleges that recordings were introduced through Zimmerman when he was witness in the disciplinary proceeding.  As a testifying witness, Zimmerman is entitled to absolute immunity for any liability resulting from the playing of the tape at the hearing.  *Rolon v. Henneman*, 443 F. Supp.2d 532, 536 (S.D.N.Y. 2006)("It is well established that testifying witnesses, including police officers, are entitled to absolute immunity from liability under § 1983 based on their testimony.").  However, like in the case of Chief Nulty, Plaintiff also appears to allege that Zimmerman is liable for the allegedly illegality of the recordings themselves.  Since the recording of the conversation was independent of Zimmerman's testimony, absolute immunity does not protect Zimmerman from any potential liability for the recording.

With respect to qualified immunity, public officials are entitled to qualified immunity if: "(1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights."  *Weyant v. Okst*, 101 F.3d 845, 857-58 (2d Cir. 1996).  Given the incomplete record before the Court, including the circumstances under which the recordings were made and what if any notice was available to Plaintiff, the Court is unable to determine whether the recording violated a clearly established right, or was objectively reasonable in light of clearly established law.

---

[2] Plaintiff's allegation that the Lorraine Wetzel disciplinary hearing is not authorized and therefore absolute immunity does not apply is unconvincing.  The Court notes that under the Rockland County Police Act §7, the town board "shall have the power and authority to adopt and make rules and regulations for the examination, hearing, investigation and determination of charges, made or preferred against any member or members of such police department".  *See also Matter of Patrolmen's Benevolent Ass'n of City of New York v. New York State Pub. Empl. Relations Bd.*, 6 N.Y.3d 563, 576 (N.Y. 2006).  Plaintiff offers no basis to conclude that the hearing was illegal or unauthorized, and the Court declines to search for one.

5

Defendants' motion to dismiss the claims against Defendants Nulty and Zimmerman are therefore granted in part.  Defendants Nulty and Zimmerman are immune from liability for any alleged harm resulting from the choice to bring disciplinary hearings against Lorraine Wetzel, or testimony provided at that hearing.

## H.  State Law Claims

### 1.  Defamation

Plaintiff's defamation claims are dismissed.  In order to state a claim for defamation, a party must "identify (1) the allegedly defamatory statements; (2) the person who made the statements; (3) the time when the statements were made; and, (4) the third parties to whom the statements were published."  *Reserve Solutions, Inc. v. Vernaglia*, 438 F. Supp.2d 280, 289 (S.D.N.Y. 2006).  "[W]ithout an allegation of a false and defamatory statement, it is axiomatic that a plaintiff cannot establish a cause of action for defamation."  *Treppel v. Biovail Corp.*, No. 03 Civ. 3002, 2005 U.S. Dist. LEXIS 18511, *10 (S.D.N.Y. August 30, 2005).  Plaintiff's only allegation of defamation against *her* is that the actions of defendants have "falsely portrayed [her] as a victim of domestic violence, and placed plaintiff's relationship with Mr. Dowd in an utterly false light, based upon defendant's wrongful intrusion into, and use of, private telephone conversations".  *Complaint* ¶ 55 (internal quotations omitted).  However, "New York does not recognize a claim of false light invasion of privacy."  *Pedraglio Loli v. Citibank, Inc.*, 97 Civ. 2179, 1997 U.S. Dist. LEXIS 20070, *12 (S.D.N.Y. December 16, 1997)(internal quotations omitted).  Accordingly, Plaintiff's claims for defamation are dismissed.[3]

### 2.  *Prima Facie* Tort

Plaintiff's *prima facie* tort claims are dismissed.  "To properly claim *prima facie* tort under New York law, a plaintiff must allege: (1) intentional infliction of harm; (2) causing special damages; (3) without excuse or justification; and (4) by an act, or series of acts, that would otherwise be lawful."  *Riel v. Morgan Stanley*, No. 06 Civ. 524, 2007 U.S. Dist. LEXIS 11153, *38 (S.D.N.Y. February 16, 2007).  "In order to satisfy the third element, a plaintiff must allege that that the conduct complained of was done with disinterested malevolence--i.e. with the sole intent to harm."  *Id.* (internal quotations omitted).  Plaintiff does not allege that the conduct alleged was undertaken with the sole intent to harm her – she alleges that the acts were undertaken to support allegedly retaliatory charges against Lorraine Wetzel because she had complained of gender inequality.  *See Complaint*.  ¶¶ 12, 86-91, 103.  Plaintiff's claims for *prima facie* tort are therefore dismissed.  *See Riel*, 2007 U.S. Dist. LEXIS 11153 at *38 ("Where, as here, a plaintiff pleads motives other than sole intent to harm the plaintiff, a claim for prima facie tort must be dismissed.").

---

[3] The Court declines plaintiff's invitation to consider the motion before the Court in light of a hypothetical variation on this claim that plaintiff intends to file in an amended complaint, rather than the complaint before it.  If plaintiff wishes to file an amended complaint, she should do so in accordance with the requirements of Rule 15.

### 3. State Constitutional Claims

Plaintiff asserts New York state constitutional claims on the grounds that defendant's conduct violated defendants' right to free speech, association, privacy, and personal liberty.  Defendant moves to dismiss solely on the grounds that New York constitutional guarantees are identical to those under the First, Fourth and Fourteenth Amendments.

With respect to Plaintiff's allegation that Defendants violated her right to free speech and free association rights, "[w]hile the New York Constitution generally affords greater protection than the federal constitution with regard to speech, claims of free speech retaliation under the New York State Constitution are governed by the same principles that apply under the Federal Constitution."  *Burns v. Cook*, 458 F. Supp.2d 29, 38 (N.D.N.Y. 2006).  Plaintiff's free speech and free association claims under the New York State constitution are dismissed on the same basis as her federal claims.  Plaintiff never alleges that the actions by the defendant, i.e. recording and playing the conversations in question, were "motivated by or substantially caused by" *Plaintiff's* exercise of a right.  Nor does she allege that the recording or playing of the recording in question was done solely in retaliation for Mr. Dowd's complaint of police brutality – instead she alleges that they were done to support allegedly retaliatory charges against Lorraine Wetzel because she had complained of gender inequality.  *See Complaint*.  ¶¶ 12, 86-91, 103.  Accordingly Plaintiff's New York State constitutional claims for violations of her right to free speech and free association are dismissed.

With respect to Plaintiff's privacy, personal liberty, and wiretap claims under the New York State Constitution, the Court construes these as analogous to plaintiff's Fourth Amendment claims, and therefore brought under N.Y. Constitution Article I, §12.  Defendant moves to dismiss these claims on the same basis as it moves to dismiss Plaintiff's Fourth Amendment claims.  Because the Court rules that there is an inadequate record at this time to dismiss Plaintiff's claims under the Fourth Amendment, the Court similarly declines to dismiss Plaintiff's claims under N.Y. Constitution Article I, §12.  *See People v. Johnson*, 66 N.Y.2d 398, 406 (1985) ("[T]his court has repeatedly stated that the proscription against unlawful searches and seizures contained in NY Constitution, article I, § 12 conforms with that found in the 4th Amendment, and that this identity of language supports a policy of uniformity between State and Federal courts.").

## III.  Motions to Disqualify and Sanctions

The parties cross-move to disqualify each other's counsel.  Plaintiff also cross-moves for sanctions.  The parties' motions are denied.

A motion to disqualify is left to the sound discretion of the district court.  *See Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990); *DelaRaba v. Suozzi*, No. 06 Civ. 1109, 2006 U.S. Dist. LEXIS 92813, *17 (S.D.N.Y. November 17, 2006).

"It is well-established that courts in the Second Circuit view motions for disqualification with 'fairly strict scrutiny' and that disqualifications are generally disfavored." *Shabbir v. Pak. Int'l Airlines*, 443 F. Supp.2d 299, 304 (E.D.N.Y. 2005). "Disqualification of an attorney is only appropriate where there has been a clear violation of the Code of Professional Responsibility leading to a 'significant risk of trial taint.'" *Id.* at 305. *Glueck v. Jonathon Logan Inc.*, 653 F.2d 746, 748 (2d Cir. 1981). "). "Such a risk exists when the attorney is in a position to use privileged information acquired in the representation of a client against that client in another matter, or when there is a significant risk that the conflict will affect the attorney's ability to represent his or her client with vigor." *Shabbir*, 443 F.Supp.2d at 305. "While the courts have made it clear that any doubts should be resolved in favor of disqualification, the burden nonetheless lies on the party arguing for disqualification to demonstrate that continued representation by the challenged attorney would result in serious prejudice." *Id.*

**1. Plaintiff's Motion to Disqualify Defense Counsel**

With regards to Plaintiff's motion to disqualify Keane & Beane, P.C., ("Keane & Beane") counsel for the defendants, Plaintiff has not met her burden of showing serious prejudice. Plaintiff's primary argument is that Keane & Beane served as counsel to the Town of Orangetown during the Lorraine Wetzel disciplinary hearings. As such, Plaintiff argues that the Town may want to either direct blame at Keane & Beane for the alleged wrongdoing, or bring a case for malpractice against Keane & Beane. Plaintiff also argues that Keane & Beane attorneys may be witnesses in this case as a result of their participation in the disciplinary hearing. Finally, Plaintiff argues that Keane & Beane has a conflict of interest in representing both the Town and the individual defendants in this case. With respect to the Town directing blame or bringing a malpractice suit against Keane & Beane, Plaintiff's assertion is entirely speculative at this point. The Court notes that the essence of Plaintiff's complaint – certainly those claims which are still viable – relate primarily to the recording of the conversation between Plaintiff and her boyfriend – an act to which Keane & Beane is not alleged to have been involved. Moreover, speculation that a party may one day decide to sue its counsel for malpractice is hardly sufficient to meet Plaintiff's burden in arguing for the drastic remedy of disqualification. With respect to the alleged conflict of interest in representing the Town and the individual defendants, this conflict is also entirely speculative at this point.

Plaintiff's argument that attorneys from Keane & Beane may serve as witnesses is also unavailing. Courts are instructed to strictly scrutinize motions invoking the lawyer-witness rule to disqualify counsel, and a party seeking disqualification on this basis "must demonstrate that the testimony of the attorney subject to disqualification is both necessary and substantially likely to be prejudicial". *Id.* at 308. Given that, as stated already, the essence of Plaintiff's remaining claims is that the conversations in question were illegally recorded, Plaintiff has not adequately demonstrated that testimony from Keane & Beane attorneys will be necessary to resolve this dispute. *See id.* ("[W]here it is unclear whether an attorney's testimony will, in fact, be necessary, the motion to disqualify should be dismissed in the absence of clear prejudice to the moving party.").

Plaintiff also seeks disqualification of Keane & Beane on the basis of alleged misstatements or exaggerations that its attorneys have made to the Court. Plaintiff is not seeking a disqualification on the basis of a conflict of interest, and cites no legal basis for this remedy. Nor has the Plaintiff demonstrated that the statements in question, to the extent they were misleading, would warrant such remedy. Therefore, the Court, in its discretion, denies Plaintiffs motion to disqualify Defense counsel on this basis.

Finally, the Court notes that counsel for Plaintiff states, in a declaration no less, that the reason for his instant motion is not necessity or prejudice, but because Defendants indicated that they intended to move to disqualify him. *See Declaration of Michael D. Diederich Jr.*, ¶ 4. Given this statement, it is all the more apparent to the Court that Plaintiff has not met her burden of demonstrating that the drastic measure of attorney disqualification is required here.

### 2. Defendant's Motion to Disqualify Plaintiff's Counsel

Defendants move to disqualify Plaintiff's Counsel, Michael D. Diederich, Jr. on the basis that the interests of Nicole Colandrea, his client in this case, are adverse to the interests of Lorraine Wetzel, his client in the Wetzel litigations. In short, Defendants argue that the litigation of Wetzel's claims of gender discrimination may necessitate playing the very recordings that Nicole Colandrea is currently claiming violate her privacy. In addition, Defendants argue that Nicole Colandrea is a fact witness in the *Wetzel* litigation. Defendants have not established that interests of Nicole Colandrea are in conflict with those of Lorraine Wetzel. The Court notes that Defendants' position is not that Lorraine Wetzel will be required to play the very recordings at issue in order to litigate her case, but rather that the Town will most likely rebut Wetzel's allegations by playing the tapes in question – in other words, it is the Town's interest in defending the Wetzel litigation which is in conflict with the Colandrea's interest in not having the tape played. Moreover, since as stated already, the essence of the remaining claims in this litigation relate to the allegedly illegality of the *recording* of the telephone conversation, the interests of Lorraine Wetzel in litigating her claims do not, at this time, appear to be in conflict with Nicole Colandrea's interest in litigating her claims. As such, Plaintiff's motion to disqualify Plaintiff's counsel is denied.

### 3. Sanctions

Plaintiff also moved for attorney's fees and sanctions against Defendants, but subsequently withdrew this aspect of her motion. This aspect of Plaintiff's motion is therefore denied as moot.

### IV. Conclusion

For the reasons stated above, Defendants' motion to dismiss is granted in part and denied in part. Plaintiff's claims under the First Amendment, Equal Protection Clause,

and Privileges and Immunities clauses are DISMISSED.  Defendants' claims for
defamation, *prima facie* tort, and free speech and free association claims under the New
York State constitution are DISMISSED.  Defendants' motion to dismiss Plaintiff's
claims under the Wiretap Act, the Fourth Amendment, and N.Y. Constitution Article I,
§12 is DENIED.  Plaintiff's motion to disqualify counsel for defendants is denied.
Plaintiff's motion for sanctions is denied as moot.  Defendants' motion to disqualify
counsel for plaintiff is denied.

　　　　*It is so ordered.*

Dated: White Plains, New York
　　　　May 18　　　, 2007

　　　　　　　　　　　　　　　　　　　Stephen C. Robinson, U.S.D.J.

10